

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| Lawrence Coleman  ) | **08CV3709** |
| Plaintiff,) | **JUDGE DER-YEGHIAYAN** |
| ) | **MAGISTRATE JUDGE MASON** |
| Vs.  ) | |
| ) | |
| Dr. Partha Ghosh  ) | |
| Defendant, ) | |

## COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983

## UNITED STATES CODE

**FILED**

JUN 3 0 2008  **TC**
Jun 30 2008
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

### I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. section 2201 and 2202. Other specific relief sought will be enumerated in a later section.

2. The Northern District of Illinois, Eastern Division is an appropriate venue under 28 U.S.C. section 1391 (b) (2) because it is where the events giving rise to this claim occurred.

### II. PLAINTIFF

3. Plaintiff, Lawrence Coleman, is and was at all times mentioned herein a prisoner of the State of Illinois, in the custody of the Illinois Department of Corrections. He is currently confined at the Stateville Correctional Center in Joliet, Illinois.

1

### III. DEFENDANT

4. Defendant, Dr. Partha Ghosh, is the on-site Medical Director for the Stateville Correctional Center. He is and was for all times pertinent to the immediate action under contract by Wexford Health Sources to provide the services of an on-site Medical Director to the inmates at Stateville Correctional Center.

5. The defendant is being sued individually and in his official capacity. At all times mentioned in this complaint the defendant acted under color of state law.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. There is a grievance procedure at the plaintiff's institution, of which the plaintiff submitted two (2) grievances on separate occasions.

7. The plaintiff expended all internal processes and received no better medical care. He then appealed to the office of the Administrative Review Board on April 1, 2006 & August 3, 2006 respectively. Plaintiff received a response from the Administrative Review Board on July 14,2006. (see Ex. AB)

8. Plaintiff also wrote several letters to the defendant, Grievance Officer, Dr. Williams and the I.D.O.C. Medical Director, Dr. Elyea. All to no avail.

9. The Plaintiff's Mother contacted the Deputy Director of the I.D.O.C. , Mr. Guy Pierce, twice by phone. After approximately two (2) months the Defendant finally saw the Plaintiff.

2

## V. PREVIOUS LAWSUITS

10. The Plaintiff has not filed or been a party to any lawsuit in this or any other District before.

## VI. COUNT 1

11. On May 6, 2002, Plaintiff was diagnosed with multiple cysts on his body after being seen in the Health Care Unit of Stateville Correctional Center for multiple painful bumps on his body. (see Ex. A)

12. Shortly thereafter, one of the cysts became infected and ruptured requiring immediate medical attention in the Health Care Unit's emergency room at Stateville. (see Ex B)

13. Over the next three (3) years there were no other eruptions. The remaining cysts became larger and more painful. They increasingly affected the Plaintiff's daily activities and made simple tasks such as shaving, sleeping and exercise in pain.

14. On September 7, 2005, Plaintiff complained of more painful bumps on his head and back just as he did three (3) years prior. Two days later on September 9, 2005, these "bumps" were also identified as cysts just as earlier. Dr. Andrew Tilden prescribed Erythromycin 500mg pills and nothing was given for pain. Medical Director, Dr. Ghosh, also signed and noted the prescription thus making him definitely aware of the Plaintiff's serious medical condition. (see Ex C)

15. On September 20, 2005, Plaintiff was experiencing nausea, vomiting, dizziness and cold sweats due to the Erythromycin pill. Plaintiff received Tylenol for these complications. (see Ex D)

16. The next three (3) months went by without any further care despite numerous notes being placed in the in-house sick call box. Again, Dr. Ghosh has been aware of the Plaintiff's serious medical condition for some time now.

17. On December 7, 2005, Plaintiff filed his first grievance asking for some medical care for these cysts. Plaintiff also asked for removal of them and to determine if they are possibly cancerous. (see Ex E)

18. On January 19, 2006, Dr. Ghosh responded to the grievance by issuing a memorandum to counselor Jill Hosselton stating that the Plaintiff had a chronic recurrent skin infection and that Dr. Ghosh would arrange for an appointment with the Plaintiff to prescribe alternate medication. (see Ex F)

19. These cysts were by now more pronounced and exponentially more painful, continuing to limit daily activities. The cyst on the Plaintiff's head is currently the size of a golf ball, painfully obvious to anyone who sees him.

20. Almost three (3) months later after even more notes in the cell house sick call box the Plaintiff wrote Dr. Ghosh on April 3, 2006 reminding him of what Dr. Ghosh told the grievance officer about setting up an appointment to check for an alternative treatment. The Plaintiff also stressed himself being continually in "severe pain" and not being able to sleep at night. (see Ex G)

21. On April 28, 2006, the Plaintiff once again wrote Dr. Ghosh about his severely painful cysts. For a second time the Plaintiff received no treatment, response or appointment. (see Ex H)

22. On May 2, 2006, the Plaintiff filed his second grievance reiterating his complete lack of medical care from Dr. Ghosh. Also, the Plaintiff has now begun to amass additional cysts on his forehead and underarm. Nothing has been done by Dr. Ghosh to counteract, cure or remove these cysts. (see Ex I)

23. When the discovery process begins in this case it will be proven that other inmates here at Stateville Correctional Center have had less extensive multiple cysts removal at the University of Illinois Medical Center which were arranged by Dr. Ghosh.

24. On June 13, 2006, The Defendant responded to the Plaintiff's second grievance with another memorandum stating that the Plaintiff was scheduled to see Dr. Ghosh on May 26, 2006 but he preferred to go to the yard. Dr. Ghosh went a step further stating that the Plaintiff is more interested in writing grievances than solving his medical issues. (see Ex J)

25. The Defendant's allegations are wholly fabricated. May 26, 2006 was a Friday. The Plaintiff's cell house yard days are on Monday and Wednesday. Even more convincing is the fact that the entire institution was on a level 1 lockdown on that day. No recreation was allowed at all. This will be proven through the discovery process.

26. Upon information and belief, all staff are apprised of lockdown status of the institution upon entering the facility. This fact alone tells the Plaintiff that the Defendant does not even keep simple daily records of hospital passes being cancelled due to lockdown. Dr. Ghosh' obvious attempt to pass the blame of missing an appointment is yet another example of his deliberate indifference to the Plaintiff's serious medical condition.

27. On June 28, 2006, the Plaintiff wrote a letter to the grievance officer, Renata Glenn, explaining the facts about Dr. Ghosh' last memorandum concerning the yard. The Plaintiff also informed her of the fact that the medical staff confirmed that they could not do any more for the Plaintiff except continue to put him in to see Dr. Ghosh. (see Ex. AA)

28. The Plaintiff further believes that it is out of retaliation and spite for the grievances filed that he has not received any medical care for his multiple, painful cysts.

5

29. The Plaintiff must rely on prison authorities to treat his medical needs; if those authorities fail to do so, as in this case, those needs will not be met and continual harm and infliction of unnecessary pain will ensue.

30. On August 24, 2006, the Plaintiff was scheduled for medical sick call per grievance. This scheduled appointment was rescheduled due to lockdown twice until September 11, 2006. (see Ex K)

31. On September 11, 2006 the Plaintiff was seen in the Health Care Unit by a Medical Technician who noted two (2) cysts on head and back for three (3) plus years. Plaintiff was scheduled for the emergency room for possible aspiration or I/D. (see Ex L)

32. On September 14, 2006, the Plaintiff was seen by Dr. Andrew Tilden in the emergency room and scheduled the Plaintiff for removal on September 22, 2006. (see Ex M)

33. The date for cyst removal came and went until October 27, 2006 when the Plaintiff was seen at Medical Sick Call, not by Dr. Ghosh. It was noted that the Plaintiff had bumps on head and back for three (3) plus years and a follow up appointment for observation was ordered for three (3) months. (see Ex N)

34. On January 26, 2007, the Plaintiff was seen again on Medical Sick Call for his three (3) month follow up appointment, again this was not by Dr. Ghosh. It was noted the Plaintiff had multiple lumps on head and back which were painful and interfered with daily activities. Plaintiff was once again referred to Dr. Ghosh for further treatment. (see Ex O)

35. On June 18, 2007, the Plaintiff was once again referred to the Medical Director, Dr. Ghosh, for further treatment of the Plaintiff's serious medical need. (see Ex P)

36. On July 20, 2007, the Plaintiff was given a routine physical, not performed by Dr. Ghosh, where the only pathology noted was cysts on his head and back. (see Ex Q)

37. On November 26. 2007, the Plaintiff wrote Dr. Ghosh a letter stating that the Plaintiff has written him numerous letters about the painful cysts that continue to plague the Plaintiff. Plaintiff asked for an appointment to solve his medical concerns. (see Ex R)

38. On November 26, 2007, the Plaintiff wrote an almost identical letter to Dr. Williams concerning the non-existent care being given by Dr. Ghosh and asked her to schedule an appointment with Dr. Ghosh. (see Ex S)

39. On December 26, 2007, the Plaintiff wrote a letter to the I.D.O.C. Medical Director, Dr. Elyea, concerning the deliberate indifferent actions on the part of Dr. Ghosh explaining the whole four (4) year ordeal that he has been forced to endure. To this date the Plaintiff has not heard from the I.D.O.C. Medical Director either. (see Ex T)

40. Finally on January 11,2008, the Plaintiff was seen by Dr. Ghosh for about five (5) minutes where he told the Plaintiff he would be sending him out to the University of Illinois Medical Center. To date the Plaintiff still has had no medical treatment.

41. On March 17, 2008, the Plaintiff's mother, Teresa Coleman, gave a sworn affidavit stating that she contacted the Office of the Deputy Director for the I.D.O.C., Mr. Guy Pierce, approximately two (2) times over a two month period concerning the Plaintiff's medical concerns. Each time she spoke with a secretary, Mrs. Torres. To her knowledge the Plaintiff has not been treated yet. (se Ex U)

42. Because the Plaintiff is powerless and vulnerable to the exploitation and retaliation by Dr. Ghosh, this action has become a necessary one to correct an ongoing blatant deprivation of the Plaintiff's 8th Amendment rights.

43. The Plaintiff believes that he has shown a serious medical need, deliberate indifference on the part of Dr. Ghosh and the necessary causation resulting from that deliberate indifference.

## VII. PENDANT JURISDICTION

44. The Plaintiff invokes the Pendant jurisdiction of this court. Even there is no diversity of citizenship, this court has the right to exercise jurisdiction over a state matter if it arises out of the same transaction as a matter already before the court.

45. Having already stated a Federal claim. The Plaintiff also asks this court to rule on his state claims.

## VIII. ILLINOIS CONSTITUTIONAL VIOLATIONS

46. The Plaintiff asserts that his rights under the Illinois State Constitution were and are currently being violated, specifically Article 1, Section 12 which is the right to a certain remedy in the law for all injuries and wrongs he receives.

47. The Plaintiff asserts that his rights under the Illinois State Constitution were and are currently being violated, specifically Article 1, Section 2 which is the right to equal protection under the law.

48. The Plaintiff asserts that he has the right to be free from these negligent acts and to medical care.

## NEGLIGENCE / DENIAL OF MEDICAL CARE

49. The Plaintiff re-alleges paragraphs 3-43 as if they were set forth here verbatim.

50. The Defendant, Dr. Ghosh, owes a special duty to the Plaintiff because he is a doctor contracted by The State of Illinois through Wexford Health Sources to provide health care services to the inmates of the Stateville Correctional Center. (see Ex's V&Z)

51. The Defendant's specific job description as outlined in his wexford contract states: Conducting inmate sick call on days and times determined by the center; Examining, diagnosing and treating inmates referred to the Medical Director; Review all reports whether they be lab. x-ray, ancillary, etc, and document them in the inmates chart; Formulating written individual treatment plans for inmates with medical problems. (see Ex's W & X)

52. Dr. Ghosh' main duty is to ensure that the services of the Health Care Unit are conducted in accords with standards of care delineated by state regulations and community practice guidelines. (see Ex Y)

53. The Defendant, Dr. Ghosh, did not live up to his duty to the Plaintiff to provide medical care to his ongoing medical problem, or formulate a written, or any other plan of treatment.

54. The fact that it took over four (4) years to actually see the Plaintiff despite his knowledge of the Plaintiff's medical problem is a negligent act all in itself.

55. When the Plaintiff receives the pertinent information through discovery, it will be seen that other inmates with the same ailments are treated completely different. It will become clear that the quality of care given here at Stateville, by Dr. Ghosh, is very un-evenly administered.

56. The Plaintiff has went without treatment for over four (4) years now and counting for multiple cysts that are only getting progressively larger, more painful and possibly cancerous.

57. All of this has occurred despite four (4) or more referrals to the Defendant, Dr. Ghosh, by his own medical staff. All referrals were blatantly ignored despite multiple grievances filed. (see Ex's E & I)

58. The injury suffered by the Plaintiff is multiple in the sense that he has endured continual pain and suffering along with painful limitations of basic daily activities for over four years now due to Dr. Ghosh' inactions.

59. But for Dr. Ghosh' actions or inactions the Plaintiff would not have been suffering daily pain and limited daily activities.

60. By removing these cysts at an earlier stage, as he has with other inmates, the Plaintiff could have been spared the larger scars, longer recovery times and more pain associated with later stage removal.

61. Any average doctor in a community setting would be able to foresee the consequences of continuing to wait to have cyst removal. The additional pain, suffering and scars are clearly foreseeable to an average doctor, especially a Medical Director such as Dr. Ghosh. The Plaintiff's injury has definitely worsened due to the undue delay in treatment.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment granting the Plaintiff:

1. A declaration that the acts and omissions described herein violated the Plaintiff's rights under the Constitution and laws of the United States and the State of Illinois.

2. Compensatory and punitive damages in an amount to be determined at trial.

3. A jury trial on all issues triable by jury for Federal or State claims.

4. Any additional relief this court deems just, proper and equitable.

Respectfully Submitted,

*Lawrence Coleman*

Lawrence Coleman R-01069
Pro-se
Stateville Corr. Center
P.O. Box 112
Joliet, Il. 60434-0112


Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the all the aforementioned information is true and correct .

Signed// *Lawrence Coleman*

Lawrence Coleman R-01069

**EX. A**

Resident's Name: Coleman, Lawrence

Resident's Number: K01069

| DATE/TIME | PROB-LEM | S.O.A. | PLANS |
|---|---|---|---|
| 5/6/02 qt | S; | multiple cyst | MD/SC |
| | ① | on on (R) shoulder | = Pt. ED & Reassurance given |
| | ② | on L/S - area | |
| | ③ ④ | R side of rank subside | = O- Ray sign Tylenol x 2º |
| | O/E | Same as above | RN for him w/ |
| | Cyst ① | On (R) clavicular area Symps to be a ganglion cyst. | Acknowledged RTN × PRN. |
| | # ② | cue on Lower back at L/S area Symps to be infective Cyst - Soft and Red inflame cyst - | |
| | A. ① | ganglion cyst | |
| | ② | one - Infective cyst on L. B. | Gandalia ay |

**EX.B**

Resident's Name _____ Oleman

Resident's Number _____ RO1069

| DATE/ TIME | PROB- LEM # | S.O.A. | PLANS |
|---|---|---|---|
| 5/11/02 7:30pm | | Cont Note | |
| | | S "I was to go to X-ray tri for the cyst on my back, but didn't get moved. Now the cyst popped ~ is bleeding a lot." | PD Cleansed area and recovered c bandages. |
| | | O 27 y/o blk male presents c large cyst on lower back bone area at waist level. Blood and pus noted coming out of cyst. around diameter of cyst - skin still in center  | ② In ER book for immediate attn by MD for Sunday 5/12/02 per RN Drote. |
| | | @ cyst on lower back | W Olsen ExamCmt |
| 5/13 | | RN note S "I need my bandage changed" O Dsg changed mod amt of grey drainage noted # cyst | P Cont c tx J Scatta RN |

IL 426-8909, DC 7147

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Stateville Correctional Center

Offender Information:

Coleman                    Lawrence                    ID#: R01069
Last Name                  First Name        MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 9-2-05 5:05 pm | S) I would like to have a physical and I have ear infection in both ear and I been breaking out on my head and back O. Pt's A+O×3 nt sign of clusters | P. refer to MDSC |
| | A R/O LBP R/O Ear Infection | J. ___ |
| | | |
| 9/9/05 9 55 a | MDIC. 1. Pt → 3 mo H/o funnilee in back & scalp lm for H also c/o pun. hx ® ear O. ® O ×3 w/ Itch - moist ___ ___ LB's ENT ® ear = ___ ___ ® ear ↑ ___ e - A. 1. ___ A) 2. N/o Funnile in dryt | 1. RTC - ® ear ___ in 2uln. 2. Delros ote ↑ 4 ↑ BID × 2wk - 3. Erythro___ u. 250 ___ ___ B 4 ___ ___ ___ S ___ |

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

E112

_____ **STATEVILLE NRC** _____ Center

Offender Information:

COLEMAN, LAWRENCE          R01069
Last Name          First Name          MI          ID#:

| Date/Time | (A.T.  Subjective, Objective, Assessment | P.  Plans |
|---|---|---|
| 9/29/05  9⁵⁵ AM | S: 40 Not feeling good due to Ⓡ E-myom-sxo taking - Bold to scalp tenderness. | A: to stop EMY feel nausea vomiting |
|  | c/o N/o no other symptoms | |
|  | A Subj 40: not feeling good | Genitalia Ca |
| 9/23/05  9⁵⁵ AM | MMIC  S: Pt 40 cold 5 fm ↑ chills  O: A∘x3 III elap R. ENT - pharynx - mild erythema. nose - edema paleⓟ of turbinate Chest / Cor nm  A: Rhinitis. | P. 1. CDM 4y  ↑↑ c P M x120  2. Tylenol 325  Ti.c c B M x ?e  3. Rtc - prn  noted |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

| Date: 12/7/05 | Committed Person (Please Print) Lawrence Coleman | ID#: R-01069 |

| Present Facility: Stateville, Corr, Ctr. | Facility where grievance issue occurred: Stateville, Corr, Ctr. |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ Disability
- ☐ Other (specify)

FEB 1 1 2006

☐ Disciplinary Report: ___/___/___ Date of Report ___ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Inmate has requested Medical attention twice for two large abscess on the inmates upper forehead and back. At both appointments with the Doctors the inmate was prescribed Medication/Antibiotic. that did not counteract/cure the abscess, rather the inmate suffered side effects from the Medication/Antibiotic. The inmate suffered from dizziness, awakening in sleep in coldsweats, and throat soarness. After inmate last appointment with Doctors, The inmate complained to Doctors, upon another request, about the side effects he was suffering before finishing the prescribed Medication the insisted the Doctors the inmate finish the Medication prescribed by him and to be sure I took the- Over

Relief Requested: Inmate request that he receives Medical attention to check and see are these abscess cancerous and could be possibly removed by Doctors here or someone who can give the inmate the proper Medical attention he seeks.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Lawrence Coleman_                    R-01069    12.7.05
Committed Person's Signature                ID#         Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 12.7.05

☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277. Springfield, IL 62794-9277

Response: Can not be resolved at this level, forwarded to the HCU. See HCU response attached. 1/30/06

J. Hsieh/fm                    [signature]              12.30.05
Print Counselor's Name        Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?

☒ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____              ___/___/___
Chief Administrative Officer's Signature            Date

Distribution: Master File; Committed Person                Page 1                DOC 0046 (Eff. 10/2001)

ILLINOIS DEPARTMENT OF CORRECTIONS

RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|

Date Received: 2/11/06      Date of Review:   3/24/06      Grievance # (optional): 0288

Committed Person: Lawrence Coleman          ID#: R01069

Nature of Grievance: Medical – Treatment

Facts Reviewed: The grievant is requesting medical attention to address his medical condition in which the medication antibiotic given to him has caused him problems. Grievant request to be seen immediately.

Per Dr. Gosh grievant was evaluated and prescribed an antibiotic for his condition. A follow-up appointment will be arranged to prescribe an alternative medication for the offender.

This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis.

Recommendation: No further action required, as it appears that the grievant's medical concerns are being addressed at this time.

Renata Glenn
_____
Print Grievance Officer's Name                      Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

Date Received: 3/31/06    ☑ I concur    ☐ I do not concur    ☐ Remand

Comments:

_____
Chief Administrative Officer's Signature                3/31/06
Date

| Committed Person's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____             _____
Committed Person's Signature                  ID#             Date




**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:     January 19, 2006

To:       Jill Hosselton,
          Counselor

From:     Partha Ghosh, MD
          Medical Director

Subject:  Grievance Response for Coleman, Lawrence R01069, E112

I reviewed offender's medical records. He was prescribed antibiotic for chronic recurrent skin infection. The writer will arrange for an appointment with this inmate to prescribed alternative medications.

PG:jrw

Cc:  Assistant Warden Programs
     Grievance Office
     Medical Records
     File

EX. 6

4/3/06

Dear Dr. Ghosh

My name is Lawrence Coleman, and I'm writing to you to remind you, that on January 19, 2006, you told the grievance officer, that you would set up an follow up appointment to see me about the two large abscess on my upper forehead and back, and about the antibiotic that has cause me many problems. I would really appreciate, if you would set up an appointment, because I'm in severe pain and I can't sleep at night.

Thank you for your time

Lawrence Coleman
Reg no. R-01069
E-112

**EX. H**

Dear Dr. Ghosh                                                          4/28/06

My name is Lawrence Coleman, and I'm writing to you for the second time, could you please set up an appointment, as you told my counselor and the grievance officer. I'm in some serious pain, and I can't sleep at night. **PLEASE SET UP THE APPOINTMENT.**

THANK YOU FOR YOUR TIME

Lawrence Coleman
Reg no. R-01069
E-112



Sub to Chief Admin Officer
Office 5/4/06

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 5/2/06 | Offender: (Please Print) Lawrence Coleman | ID#: R-01069 |
|---|---|---|
| Present Facility: Stateville, Correctional Ctr. | Facility where grievance issue occurred: Stateville, Correctional Ctr. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility

- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

- [ ] Restoration of Good Time
- [X] Medical Treatment

- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify):

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report                Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

Brief Summary of Grievance:    Offender is responding to his previous grievance following

the grievance process the offender first sent his previous grievance

to counselor Jill Hosselton. In turn, Ms. Hosselton, sent offender

previous grievance to the medical director, Dr. Partha Ghosh. Whereas,

the medical director submitted a response to the offender's previous

grievance on January 19th 2006, stating:

   That he (Dr. Ghosh) reviewed offender's medical records
and he will personally arrange an appointment with the
offender, to prescribe alternative medication. See Ex.1.

   The Medical Director Dr. Ghosh, has not complied with his memoran-

dum, and it's been four months. The offender has took it a step further

Relief Requested:    The offender is still seeking the proper medical attention he need, and to

check and see are these abesses  cancerous and could be possibly removed by doctor's

here, if not an outside Hospital, where offender will get proper medical attention.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Lawrence Coleman_                    R 01069        5 3 06
        Offender's Signature                             ID#              Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 5 / 11 / 06        [ ] Send directly to Grievance Officer        [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _Can not be resolved at this level, forwarded_
_to the HCU. 4/6/ See HCU response attached._

_S. Hall_                    _[signature]_              6-21-06
Print Counselor's Name            Counselor's Signature        Date of Response

---

**EMERGENCY REVIEW**

Date Received: 7 26 06        Is this determined to be of an emergency nature?    [X] Yes; expedite emergency grievance
                                                                                    [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_Dallas Lee_                                             7 26 06
        Chief Administrative Officer's Signature                          Date

he wrote the Medical Director Dr. Ghosh, and stated:

> I'm writing to you to remind you that on January 19,
> 2006, you told the grievance officer, that you would
> set up an follow up appointment to see me about the
> two large abscess on my upper forehead and back, and
> about the antibiotic that has cause me many problems.
> I would really appreciate, if you would set up an
> appointment, because I'm in severe pain and I can't
> sleep at night. See Ex.2.

Then on April 28, 2006, the offender wrote the Medical Director

again and stated:

> Please set up an appointment as you told the grievance
> officer. I'm in some serious pain, and I can't sleep
> at night. Please set up the appointment. See Ex.3.

Whereto, the grievance officer Renata Glenn, was unaware that the

Medical Director, Dr. Ghosh, did not comply with his memorandum at the

time she reviewed offender's previous grievance See.Ex.4. The offender

still suffers with two large abscess on offender's upper forehead and

back, and now other abscess are accumulating on the forehead and under-

arm of the offender. The previous medication/antibiotic did not counter-

act or cure the abscess, rather the offender suffered from the side

effecta, as previously explained in offender's previous grievance, from

the previous prescribe medication/antibiotic. See Ex.5.

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|

Date Received: February 27, 2006 ___ Date of Review: July 28, 2006 ___ | Grievance # (optional): 0288 ___

Committed Person: Lawrence Coleman ___ | ID#: R01069 ___

Nature of Grievance:  Medical Tx

Facts Reviewed:  Grievant alledges he was unable to see Dr. at HCU

This is a duplicate response.

A medical response has already been given to this grievant. A counselor response has been given.

Grievant was given made per medical file on 6-16-06.

An appeal if desired should follow the appeal process and not result in duplicate grievances.

Recommendation:  Grievance denied.

Tammy Garcia ___
Print Grievance Officer's Name

Grievance Officer's Signature

(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

Date Received: 8-2-06 ___ | ☑ I concur | ☐ I do not concur | ☐ Remand

Comments: ___

Chief Administrative Officer's Signature | Date  8-2-06

| Committed Person's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature ___ | ID# ___ | Date ___



**Rod R. Blagojevich**
Governor



**Illinois**
**Department of**
**Corrections**

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL  60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:       June 13, 2006

To:          Jill Hosselton,
             Counselor

From:       Partha Ghosh, MD
             Medical Director

Subject:    Grievance Response for Coleman, Lawrence R01069, E112

Offender Coleman was scheduled to see the writer on 5/26/06 but he preferred to go to the yard.  MD sick call has been scheduled to evaluate him. If he fails to show up it may be assumed the offender is more interested in writing grievance then solve his medical issues.

PG:jrw

Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File

CX. K

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**Stateville Correctional Center**

Offender Information:

Coleman                    Lawrence                    ID#: R01069
Last Name                  First Name         MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|-----------|-----------------------------------|-------|
| 8-24-06 8:25a | S per grievance pt is request to be seen | Refer to MDSC |
| | O Ø | |
| | A 70A bcea on head | S Thompson |
| 8-28-06 | Out Note | |
| 11:00/am | MDSC Rescheduled due to lockdown | (SCC 1) |
| 9-4-06 9:30/am | MDSC note Cancelled due to lockdown & holiday schedule | Pto Rescheduled for 9-11-06 S Shields |
| 9-8-06 8:33p | Wrote a note re: rescheduling for MDSC pt is already rescheduled pt MDSC on 9-11-06 | Cathy Perkins T |
| | | |
| | | |
| | | |
| | | |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper



ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Stateville Correctional Center

Offender Information:

Coleman ___ Lawrence ___ ID#: B01663
Last Name            First Name        MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|-----------|-----------------------------------|-------|
| 9-1-06 | PASC Notes | 1. Schedule EK |
| 11⁺A | 32yo AAm c̄ 2 cysts one on scalp | wait for positive |
| | head and one on post chest c̄ | approval on 1/07 |
| | 3yr. ℗ more. One on back has | 2. pt education/ |
| | begun to be painful. Has caused | discussion re |
| | discomfort w/ ℗ los. off and on | |
| | over past few wks | |
| | | |
| | O: gen well appeared | |
| | Alert & aⁿ GC lungs cr ℗ | |
| | ext. post chest w/ mobile | |
| | non-tender, soft mass 3cm | |
| | 3cm . | |
| | scalp c̄ raised and mobile | |
| | nodule 3.5cm x 3.5cm | |
| | | |
| | A: 1. cyst scalp & post chest | |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Stateville Correctional Center

E 112.

Offender Information:

COLEMAN , Lawrence    ID#: R01069
Last Name          First Name       MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 9.14.06 | S. Pt c̄ Hx of cyst ® Th 3 vertebrae. here for F/u | 1. Cyst removal next Friday 9.21.06 |
| 138/82 | O  A0x3 w. J. afeb | 2. PCN VK 500mg |
| 69 | skin - ® upper back Th3 vert. area c̄ 1cm soft, movelele non tender seb. cyst. | po BID x1m. 3. [signature] 9/14/06 |
|  | A. 1. seb. cyst upper back. | [signature] |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper



ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Stateville Correctional Center

Offender Information:

Coleman _____ Lawrence _____ ID#: 120/069

Last Name | First Name | MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|-----------|-----------------------------------|-------|
| | HPI for | |
| 10-27-06 11³⁰ᴬ | C Bump on top of his head & upper back for 3 years | → Observe |
| | | → F/U after 3 month |
| | O Acut⁻ | |
| | Neck ( Posterior Area — over the spine about 2-3 cm Dia- non tender & discharge ( fluctuant) | / only ∅ |
| | Upper Back — over the spine fluctuant - about 2-3 cm in Dia- non tender along the vertebral column | |
| | A Cyst- Acute Area Neck & upper Back | |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Stateville Correctional Center

**Offender Information:**

| | | | |
|---|---|---|---|
| COLEMAN | LAWRENCE | | ID#: 120/00 |
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| | *H NOTE* | |
| 4-26-07 1:00 p | S̄ F/U HEAD TOP HEAD | 7 SKULL |
| | " BACK ( THORAC ) AREA | X-RAY AT |
| | CLAIM IT HURTS SOMETIME | NRC |
| | AND HC SWELL | |
| | | 7 F/U Y |
| | O ACUT | MEDICAL |
| | TOP HEAD- BASS SOFT | DIRECTOR |
| | FLUCTUANT ABOUT | FR FURTHER |
| | 1½ CMS EACH LENGTH | TREATMENT |
| | × WIDTH NON TENDER | |
| | BACK ( THORAC AREA) | |
| | LARGE LESION- SOFT | |
| | FLUCTUANT NON- | /
| | TENDER ABOUT 2×2 CM | @MBC |
| | A CYSTS- HEAD | |
| | & BACK | |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

**Offender Outpatient Progress Notes**

_____ Center

Offender Information:

Last Name: Coleman   First Name: Lawrence   MI: ___   ID#: ___

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| | M A core | |
| 6-18-07 9ᵘᵗ | P/u X-ray (spine) — Neg. | |
| | Lower Cer Ant Mass | 1 will Refer |
| | Parietal Area (Hard) | To Medical |
| | Bump - Back (Kidney Area) | Director for |
| | O Alco Fro distal | Further Treatment |
| | Back (Kidney) — | |
| | Hard, Parietal Area | |
| | Soft Mass L to Round (Par. Temp. Area Abt.) | |
| | 2-2.5 cm Long, 1 dia | 1 error |
| | Neuro WNL | |
| | P Cysts Head & Back | |

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Physical Examination
### STATEVILLE CORRECTIONAL CENTER

Offender Information:

*Coleman*          *Laurence*          ID#: *L.C1069*
Last Name              First Name          MI

Date: *7 , 20 , 07*

Time: *125*    □ a.m.  □ p.m.

Race: □ White  ☑ African American  □ Asian American  □ Hispanic  □ Native American  □ Other: _____

Gender:  ☑ Male   □ Female

Date of Birth: _____ / _____ / _____

| | Yes | No | Explanation: |
|---|---|---|---|
| Hx reviewed | | | |
| Lab reviewed | | | |

| Subjective: Condition | Yes | No | Explanation: |
|---|---|---|---|
| Allergy | | | |
| Substance Abuse | | | |
| a. Alcohol | □ | ☑ | |
| b. IV Drugs | □ | ☑ | |
| c. Other Drugs | □ | ☑ | |
| d. Hx, drug/alcohol withdrawal | □ | ☑ | |
| Shared Needles | | | |
| Sexual Contact with: | | | |
| a. IV drug user | □ | ☑ | |
| b. Prostitute(s) | □ | ☑ | |
| c. Multiple Partners | □ | ☑ | |
| Homosexual Activity | | | |
| STD | | | |
| HIV+/AIDS | | | |
| Blood Transfusions | | | |
| Three or more months of: | | | |
| a. Fever | □ | ☑ | |
| b. Diarrhea | □ | ☑ | |
| c. Night Sweats | □ | ☑ | |
| d. Persistent URI | □ | ☑ | |
| Weight Loss (>15 Lbs ) | | | |
| Lymphadenopathy | | | |
| Fatigue | | | |
| Other (Female) a. Mammography | □ | □ | G _____ P _____ AB _____ LNMP _____  Date/Results: _____ |
| b. Family Hx Breast Cancer | □ | □ | If yes, family member: _____ |
| c. PAP Smear | □ | □ | Date/Results: _____ |

**Past Hospitalizations:**

Diagnosis: _____          Diagnosis: _____

Date(s): _____          Date(s): _____

Hospital: _____          Hospital: _____

Location: _____          Location: _____

Distribution:  Offender's Medical Record          Side1          DOC 0099 (Eff. 9/2002)

ILLINOIS DEPARTMENT OF CORRECTIONS

Offender Medical History

Stateville Correctional Center

☐ Reception History

☐ Periodic History

Date: 1, 30, 07

Time: 1:10 ☐ a.m.  ☐ p.m.

Offender Information:

Last Name: Coleman    First Name: Lawrence    MI

ID#: K01069

Race:  ☐ White  ☑ African American  ☐ Asian American  ☐ Hispanic  ☐ Native American  ☐ Other

Gender:  ☑ Male  ☐ Female   Age 33   Date of Birth: 5, 30, 73

| Subjective: | Past Medical History / History of Present Illness / Family History | | | |
|---|---|---|---|---|
| Condition | Yes | No | Family History | Explanation |
| Allergies | | ✓ | | |
| Smoking | ✓ | | | |
| Pediculosis | | ✓ | | |
| Seizures | | ✓ | | |
| Asthma | | ✓ | | |
| Cardiac/HTN | | ✓ | | |
| Diabetic | | ✓ | | |
| Communicable Disease | | | | SFY RX Comp '05 (Stat CC) |
| a. Hepatitis/Jaundice | ☐ | ☐ | | |
| b. Hx + PPD/Active TB | ☑ | ☐ | | |
| c. STD | ☐ | ☑ | | |
| d. HIV +/AIDS | ☐ | ☑ | | |
| Surgeries | ☐ | ☑ | | |
| Hx of Psych Tx | ☐ | ☑ | | |
| a. Past Suicide Attempt | ☐ | ☑ | | |
| b. Current Suicidal Ideation | ☐ | ☑ | | |
| Recent Drug/ETOH use | ☐ | ☐ | | |
| Mobility Problems | | | | |
| a. Assistive Devices | ☐ | ☑ | | |
| b. Prosthetics | ☐ | ☑ | | |
| c. Specialized Equipment | ☐ | ☑ | | |
| Other Medications | | | | |
| History of Sexual Abuse or Predator | | | | |
| Oriented x3 | ✓ | | | |
| Other: _____ | | | | |

Objective:  T: 97.6  P: 87  ☐ regular  ☐ irregular   R: 16  ☐ regular  ☐ irregular   B/P: 131/6-

Height: 5'11"   Weight: 202   Vision: RT 20/ 25   LT 20/ 25   Corrected: RT 20/ ___   LT 20/ ___

Behavioral appearance and mental status, Evidence of deformity, trauma, and skin conditions. _____

Assessment: PKU  SFY

Plan:  (Check and complete as appropriate)

1. Physical Examination:  ☐ Urgent  ☑ Routine
2. Mental Health Referral:  ☐ Urgent  ☑ Routine
3. Health Information Given:  ☑ Yes  ☐ Refused
4. PPD Results:  ☐ Positive  ☐ Negative
5. Chest X-ray performed:  ☐ N/A  ☐ Yes  ☐ No
6. Other: _____

Date PPD Administered: SFY   Date PPD Read: ___/___/___

Reading: _____ mm  By: _____

Print Name of Interviewer: _____   Signature: _____

| R & C Use Only | | | | |
|---|---|---|---|---|
| LAB: _____ | Sickle Cell: ☐ Yes  ☐ No | Dental: _____ | | Panorex: _____ |
| EKG: _____ | CXR: _____ | Female Only:  PAP: _____ | | Mamo: _____ |

Distribution:  Offender's Medical Record

DOC 0092 (Eff. 9/2002)

Offender Information:

Last Name: _Coleman_   First Name: _Lawrence_   MI: ___   ID#: _R01069_

Date: ___ / ___ /20___

Time: ___ ☐ a.m. ☐ p.m.

Race: ☐ White  ☐ African American  ☐ Asian American  ☐ Hispanic  ☐ Native American  ☐ Other ___

Gender: ☐ Male  ☐ Female    Date of Birth: ___ / ___ / ___

| Objective: System | Normal | ABN | Explanation: |
|---|---|---|---|
| Head, Neck, Face & Scalp | ✓ | | Lump – Parietal Area ( Soft, Flat |
| Nose and Sinuses | ✓ | | Fracture 1 X 1 cm |
| Mouth and Throat | | | Oral Condition: Good |
| Ears | | | Drums |
| Eyes | | | Pupils: Accommodation: / Fundoscopic: |
| Lungs and Chest including Breast | ✓ | | Auscultation: |
| Heart | ✓ | | Rate: Rhythm: / Size: Murmurs: |
| Vascular | | | |
| Abdomen | ✓ | | Consistency: Masses: / Tenderness: Scars: |
| Anus, Rectum (Prostate – 40+ Male Only) | ✓ | | Visual: Digital: / Guaiac + / - / R: |
| Genito-Urinary System | | | |
| Upper Extremities | ✓ | | Strength: 5/5 full ROM: |
| Lower Extremities | | | Strength: 5/5 full ROM |
| Spine and Musculo-Skeletal | ✓ | | |
| Skin and Lymphatics | | | |
| Neurologic DTR's | ✓ | | Romberg: (-) Biceps: 2/+ Patella: |
| Mental Status | ✓ | | A & O x 3 |
| Pelvis (Female Only) | | | Cervix: Fundus: / Vaginal Canal: PAP: ☐ Y ☐ N ☐ R |

Assessment: Problem # ___

HKE

chronic aywn

to monitor problem

form

Cyst ( Parietal H#

Plan: (Check box as appropriate and complete plan)

Placement Consideration: ☐ Yes  ☑ No
HR: ☐ Yes  ☐ No
Food Handler Status: Yes

Examiners Signature:

Print Name: Dr. Aguinaldo

Signature: ___

Date: 7 / 20 /20 ___

**EX. R**

Dear Med. Dir. Dr. Ghosh,                                  11-26-07

This is L. Coleman #R-01069, and I have written you on numerous occasions requesting to be seen regarding Abcesses on my upper Forehead and Back. You Schedule me once in 2006, but we were on lock down 5/26/06.

It has now been well over 4 years now and the Abcess is worsening and causing me Headaches, and it still gives me pain when I shave.

Could you please Schedule me for an Appointment so I can resolve my medical Concerns this is urgent.

L. Coleman R-01069
E-124

Ex. S

Dear Dr. Williams,                                    11-26-07

   This is L. Coleman #R-01069, And Approximately
Almost year Ago you seen me About A large Abcess
on my upper forehead. Your opinion was that I needed
to see An Outside Doctor, but you had to schedule me to
see the Medical Director Dr. Ghosh. I want to Advise
you that Dr. Ghosh has not seen me At All.

   Now, the Abcess or tumor is causing me Headaches,
And it still gives me pain when I shave. The Headaches
Are so extreme that I get Dizzy And Fatigued.

   Could you please schedule me for Another Examin-
ation or get me in to be seen by Dr. Ghosh.

                         L. Coleman R-01069
                         E-124

12-26-2007  **EX. T**

DEAR DR. ELYEA, (AGENCY MEDICAL DIRECTOR)

This is inmate L.Coleman I.D. NO.R-01069, and I am contacting you regarding medical treatment here at Stateville Correctional Center.

I have been seeing Doctors for over a period of four years now, regarding two large Abcesses on my upper fore-head and back, which both have been giving me pain, head-aches, and causing me uncomfort when I sleep.

Doctor's here at the facility have tried treatments that did not cure my problem. Being that Doctor's here at the facility have taken every possible measure to treat my problem they had no other alternative but to schedule me for an appointment to see the medical director at the facility for further treatment.

My last appointment concerning this matter was December 17th, 2007, in which the doctor again scheduled me for an appointment to see the medical director at the facility.

Here is where my issue lies, I have been scheduled to see the medical director on numerous occcasions regarding this same medical issue over last four plus years, but the medical director has not followed through on none of my scheduled appointments or even seen me, regarding my medical concerns. I have written to the medical director on numerous occcasions, but I have yet to receive any response to any of my letters.

Now I come to you DR. ELYEA, to ask for your help to intervene in this problem. I am still in pain and discomfort but the medical director here at the facility has not shown any con cern or consideration to my agony. Will you DR. ELYEA please be of my assistance in getting me the medical attention I need. I sincerely THANK YOU IN ADVANCE.

/SS/ *Lawrence Coleman*
**LAWRENCE COLEMAN R-01069**
STATEVILLE CORRECTIONAL CENTER
P.O.  BOX 112
JOLIET,ILLINOIS 60434-0112

County of Cook}
State of Illinois}

# **Affidavit**

I, Teresa Coleman do solemnly swear that the following statement is true, correct, and given of my own free will.

I, Teresa Coleman contacted the office of the Deputy Director for the Illinois Department of Corrections, Mr. Guy Pierce approximately two times by phone over a two month period in 2007. During these calls I spoke with Ms. Torres, whom I believed to be his secretary. Each time I spoke with Ms. Torres I asked about securing some form of medical treatment for Lawrence Coleman regarding the multiple cysts on his head and back, which has been a problem for him for quite some time. I have personally been aware of Mr. Coleman's health problems and his multiple attempts to secure treatment at Stateville Correctional Center. My first initial contact with Ms. Torres stated that she would be in touch with me after she checked into Lawrence Coleman's medical concerns in which she never did contact me. After I visited Lawrence Coleman, nothing ever became of my conversation with Ms. Torres.

I contacted Ms. Torres a second time, approximately a month after our first contact. It was then that Lawrence Coleman said he was seen by the Medical Director. At this point to my knowledge Lawrence Coleman's medical concerns still have not been addressed even after he saw the Medical Director.

_Teresa Coleman_
**Affiant**
TERESA COLEMAN

Subscribed and sworn to before _A Notry of State il._
me this day _17_ , of _March_ 2008

_Jacline Labrada_
Notary Public

*OFFICIAL SEAL*
JACELA LABRADA
...

2.1.15  IDOC: the Illinois Department of Corrections and any successor agency.

2.1.16  IDOC Medical Director: the individual, or his or her designee, who oversees this Contract for the IDOC and provides direction to healthcare vendors and IDOC healthcare staff.

2.1.17  ILCS: Illinois Compiled Statutes. An unofficial version of the ILCS can be viewed at http://www.legis.state.il.us/legislation/ilcs/ilcs.asp.

2.1.18  On-site Medical Director: the Vendor employee at each Center who provides services as a lead worker for staff in the Center health care unit.

2.1.19  Parties: the State of Illinois and Vendor.

2.1.20  State: the State of Illinois, as represented through any agency, department, board, or commission, including HFS and IDOC.

2.1.21  Transfer Coordinator: the IDOC employee who coordinates inmate transfers from one Center to another Center.

2.1.22  Vendor:    Wexford Health Sources, Inc., the company providing health care services to IDOC inmates under this Contract.

## 2.2    TERM OF CONTRACT AND GENERAL SPECIFICATIONS:

2.2.1    The term of the contract shall be for two years, beginning on December 15, 2005 or upon execution by HFS whichever is later. The State reserves the right to renew the contract on the same terms and conditions for three additional one-year terms, or for terms of a length lesser than the initial term.

2.2.2    This contract is between the Illinois Department of Healthcare and Family Services, Illinois Department of Corrections, and Vendor to provide health and mental health services to IDOC inmates in order to maintain the health status of inmates, establish innovative and cost effective medical and administrative programs, improve the quality of care, provide acceptable, cost effective levels of staffing, positively impact the purchasing of pharmaceutical or medical supplies and improve the overall contract performance.

2.2.3    Vendor shall arrange for the provision of the identified health care services to inmates assigned to Stateville Correctional Center, Stateville R & C, Sheridan Correctional Center, Dixon Correctional Center, East Moline Correctional Center, IYC Kewanee, Hill Correctional Center, Dwight Correctional Center, Pontiac Correctional Center, Illinois River Correctional Center, Western Correctional Center, Lincoln Correctional Center, Logan Correctional Center, Decatur Correctional Center, Danville Correctional Center, Jacksonville Correctional Center, Graham Correctional Center, Robinson Correctional Center, Lawrence Correctional Center, Menard Correctional Center, Pinckneyville Correctional Center, Big Muddy Correctional Center, IYC Harrisburg, Vienna Correctional Center, Shawnee Correctional Center, Tamms Correctional Center & MSU.    Should additional IDOC Center(s) be opened in the vicinity of these facilities during the term of the contract, Vendor agrees to provide the identified health care services to the additional IDOC Center(s) at the rates in accordance with the contract and any amendment(s) thereto in effect at the time health care services are needed.    This provision of additional services is subject to the review and approval of HFS and IDOC.

2.2.4    Performance Guarantee.   In accordance with 730 ILCS 5/3-2-2(3), Vendor shall provide documentation of an established line of credit that meets the approval of HFS and IDOC.   This performance guarantee shall be submitted to the State on or before the effective date of the Contract. This performance guarantee shall be forfeit in the event Vendor fails to perform under this Contract and such failure results in termination of this Contract by the State, under Section 4.8.1 or 4.8.2.

c.   STAFF RECRUITMENT AND EVALUATION

   i.     Medical Director shall conduct recruitment of health care staff, as requested by the Chief Administrative Officer or his designee.

   ii.    Medical Director shall supervise and direct the clinical activities of all health care staff, including:

      1.    Supervising infirmary rounds made on patients by other physicians.

      2.    Reviewing and approving all referrals to outside hospitals or specialists.

      3.    Evaluating services and treatment provided by other staff physicians, physicians' assistants, and other health care staff.

      4    Properly completing employee evaluations for those employees under Medical Director's direct supervisor, in accordance with applicable state rules.

      5.    Participating in disciplinary hearings of other employees as requested by the Chief Administrative Officer or his designee.

      6.    Assisting in planning schedules of health care staff to provide optimal coverage.

d.   QUALITY ASSURANCE

Medical Director shall develop and implement a quality assurance program that may include, but is not limited to, audit and medical chart review procedures

e.   CLINICAL DUTIES

Medical Director shall be responsible for:

   i     Conducting inmate sick call on days and at times determined by the Center.

   ii.    Examining, diagnosing and treating inmates referred to Medical Director

   iii.   Reviewing and/or monitoring the staff physician review of all laboratory and X-ray and ancillary reports, and ensuring that the review is documented in the inmate's chart.

   iv.   Examining and rendering initial emergency medical treatment to all persons who are injured or who become ill while on the premises.  These persons shall be referred to their physician for any necessary follow-up care.

   v.    Providing 24-hour on call emergency care to the Center when requested by the Chief Administrative Officer or his designee.

   vi.   Performing employment, Workers Compensation or other physician examinations for the Center.

   vii.  Examining employees to assess fitness to perform duties as required by the Chief Administrative Officer or designee.

   viii.  Periodically evaluating dietary personnel to ensure that they satisfy all health requirements applicable to dietary workers.

   ix.   Providing minor surgical treatment at the Centers as deemed medically appropriate to include suturing for minor lacerations.

Contract for Services
2006-05-001
84 of 105

    x.    Formulating written individual treatment plans for inmates with medical problems which include directions to Health Care and other personnel regarding their roles in the care and supervision of these parties.

    xi.    Conducting infirmary rounds, or in his absence, ensuring that rounds are conducted by another physician.

    xii.    Conducting intake and annual physical examinations on inmates as provided for by Department of Corrections procedures or as dictated by good medical practice.

    xiii.    Evaluating food handler candidates prior to assignment and periodically thereafter to ensure compliance with all health regulations.

f.    **REFERRALS TO OUTSIDE HOSPITALS OR SPECIALISTS**

    i.    Medical Director shall provide verification to the Agency Medical Director of at least limited admitting privileges at the hospital.

    ii.    Medical Director shall make referrals and arrangements with medical specialists under contract as needed for treatment of those inmates with health care problems that may extend beyond the scope of services provided by the contract, subject to the approval of the facility's Chief Administrative Officer or his designee.

    iii.    Medical Director shall review the health care status of inmates admitted to outside hospitals to ensure that the duration of the hospitalization is no longer than medically indicated.

    iv    Medical Director shall ensure that discharge summaries are furnished to the Center by the hospital in a timely fashion.

## DIRECTOR OF NURSING

Coordinates and supervises all nursing functions within the facility.

The Director of Nursing shall:

a.    Manage all inpatient and outpatient nursing functions.

b.    Schedule nursing coverage for all shifts.

c.    Where applicable, be responsible for coordinating all in-services training programs.

d.    Supervise all assigned staff nurses and paraprofessional nursing personnel.

e.    Where applicable, be responsible for orientation of nursing personnel.

f.    Where applicable, assist Health Care Unit Administrator in ensuring that the contract terms of nursing coverage are met.

g.    Prepare monthly statistical reports concerning nursing services.

h.    Assist administrative staff in personnel functions relating to nursing staff, e.g., hiring, evaluations, etc

i.    Coordinate special projects as requested by the Health Care Unit Administrator; e.g., nurse audit, development of nursing policies and procedures, etc.

j.    Where applicable, attend Quality Assurance and Medical Audit Committee meetings, as requested.

## PATIENT SERVICES DIRECTOR (RN):

Contract for Services
2006-05-001
82 of 105
JOB DESCRIPTIONS

● ON-SITE MEDICAL DIRECTOR

The Medical Director shall provide the overall supervision for clinical services at the contract facility, shall attend patients, provide medical consultation for the staff and correctional executives, and conduct the liaison function for clinical matters with medical providers outside the Center.

The Medical Director shall secure and maintain, throughout the term of this Agreement, limited admitting privileges at the hospital(s) to be designated by the using facility.

The Medical Director shall be responsible for ensuring that services of the Center's Health Care Unit are conducted in accord with standards of medical care delineated by State regulations and community practice guidelines.

### a.   ADMINISTRATIVE

i.    Medical Director shall evaluate all existing medical programs and assess the health care needs of the inmate population, making recommendations regarding medical programs or services as appropriate.

ii.   Medical Director shall assist in designing and implementing policies, procedures and protocols for Health Care Unit and Medical staff.

iii.  Medical Director shall be responsible for reporting any problems and/or unusual incidents to the Chief Administrative Officer or his designee.

iv.   Medical Director shall attend staff meetings and participate on various committees as requested by the Chief Administrative Officer or his designee.

v.    Medical Director shall represent the Health Care Unit in discussion with local civic groups or visiting officials of the Illinois Department of Corrections as mutually agreed upon by the parties.

vi.   As requested by the Agency Medical Director, the Chief Administrative Officer, or the Health Care Unit Administrator, Medical Director shall perform evaluations and inspections of conditions in living units, segregation unit, dietary areas and other portions of the facility and review all reports pertaining to sanitation or medical services and make appropriate recommendations

vii.  In the event of an emergency as determined by the Department of Corrections, the Medical Director shall provide emergency care and referrals to appropriate hospitals and physicians as requested by the Chief Administrative Officer, the Agency's Medical Director, or their designee.

### b.   TRAINING AND ORIENTATION

i.    Orientation of the New Employee

1.    Medical Director shall be responsible for ensuring that all new health care personnel are provided with orientation, on-site at the Center regarding medical practices.  Orientation concerning other facility operations is the responsibility of the Center

ii.   In-Service Training

1.    Medical Director shall direct the development of the Center's continuing medical education curriculum and establish a program providing in-service education.

2.    Medical Director shall be responsible for ensuring that staff receives training, as necessary to ensure proper performance of their job duties.

Contract for Services
2006-05-001
5 of 105

### 2.3   MEDICAL CARE:

**2.3.1   General.** Vendor shall arrange for the provision of medical services to IDOC inmates on-site and off-site as medically indicated, including, but not limited to direct care, dental, medical, hospital, mental health, pharmacy, laboratory, radiology, optical and specialty services. Vendor shall ensure that all medical services are provided in accordance with medically accepted community standards of care, and that complete and accurate medical records are kept for all inmates.

**2.3.2   Treatment Plans.** Vendor shall ensure that a treatment plan is developed for each inmate who requires on-going care. The treatment plan shall include a written statement, which specifies the particular course of therapy and the roles of medical and non-medical personnel in carrying out the course of therapy. The plan shall be individualized and based on an assessment of the inmate's needs, the short and long term goals, and the methods by which the goals shall be pursued. When clinically indicated, the treatment plan may provide the inmate with access to a range of supportive and rehabilitative services (e.g., individual or group counseling, or self-help groups).

**2.3.3   Special Medical Programs.** The On-site Medical Director shall develop and implement, subject to the approval of the IDOC Medical Director, special medical programs for inmates who require close medical supervision, including chronic and convalescent care. The plan of treatment shall include directions for health care staff and Center staff regarding their roles in the care and supervision of the inmate. The special medical program shall service a broad range of health problems including, but not limited to, seizure disorders, diabetes, hypertension, HIV, potential suicide, chemical dependency and psychosis, such that:

     **2.3.3.1** All inmates at the Center who have high blood pressure have a blood pressure recorded at their last visit as within normal limits, or, for those whose pressures are not normal, there is a clear plan to achieve a normal blood pressure.

     **2.3.3.2** All diabetic inmates at the Center have a hemoglobin A1c level within the accepted range, or a clear plan to achieve a level within the accepted range.

     **2.3.3.3** All inmates at the Center who have AIDS and who are eligible for PCP prophylaxis receive it.

     **2.3.3.4** All asthmatic inmates at the Center have their disease labeled on the problem list as mild, moderate, or severe.

     **2.3.3.5** All seizure-prone inmates at the Center have documentation of seizure activity since their last clinic visit.

**2.3.4   Infirmary Care and Referrals.**

     **2.3.4.1** Infirmary care shall be available for inmates requiring skilled nursing care, chronic illness care, convalescent care, and those acute and chronic conditions that can be managed on-site. All infirmary encounters shall be documented in the inmate's medical record in a timely manner. Vendor shall provide the following when applicable:
       a.   24-hour coverage, supervised on-site by a Registered Nurse;
       b.   Daily infirmary rounds by nursing staff;
       c.   24-hour Physician on-call coverage;
       d.   Manuals of nursing care procedures;
       e.   A separate and complete medical record for each patient;
       f.   Infirmary rounds by a physician at least 3 times per week for acute care patients and at least once per week for chronic care patients.

     **2.3.4.2** If, in the opinion of the On-site Medical Director, an inmate cannot be properly treated in the immediate area, the On-site Medical Director shall refer the inmate to a community medical facility that can provide the necessary treatment. This facility shall be approved by HFS and IDOC. Medical furloughs shall be scheduled with security prior to services being performed.

**EX. AA**

Dear Ms. Renato Glenn,                                      6/08/06

This is the grievant Lawrence Coleman ID No: R-01009, and the Counselor Ms. Hosselton advised me that I could put a letter with my grievance.

First, I would like to make you aware of what has taken place so far in trying to Resolve my medical Issue. I had submitted a Second Grievance Regarding Medical Treatment where the Medical Director Dr. Partha Ghosh has submitted a Response stating "that he scheduled the offender for an appointment to see him personally on May 26th 2006, but the offender preferred to go to the yard." Then Mr. Ghosh goes even further to make the offender out to be a Nuisance for filing a grievance.

Now, to address the Medical Director's Statement as to the offender missing an appointment to go to yard could not be further from the truth. May 26th, 2006, is a Friday and I have an Assignment and work five days a week Mon. - Fri. and my yard day is on Saturday (Detail yard). Also, I am in E - House the Cell House yard days are Monday and Wednesday, Plus, E - House was on a Level One Lock down on May 26th, 2006 and the Counselor Ms. Hosselton has Confirmed that we were on Lock down, and the offender has NEVER RECEIVED a Sick Call pass for May 26th 2006.

At this point, the grievant still has not talked to the Medical Director. So far the grievant has been informed by the Medical Technician "Bob" and Dr. Tilden who has PRESCRIBED

me another Antibiotic on 6/21/06, in which the Med Tech
Bob informed me that the Antibiotic probably would not cure
the Abcess. In which I knew the Antibiotic wouldn't cure
the Abcess because of the numerous Antibiotics I had tried in the
past and complained of causing the grievant Complications. The grievant
is requesting a second opinion from a outside Hospital, because the
Medical Staff here has already confirmed with the Counselor Ms
Hasseltor that there is nothing else they can do to treat the
grievant or in the alternative set up an appoint to see the Medi-
ical Director.

**Ex. AB**

Rod R. Blagojevich
Governor

# Illinois
**Department of**
# Corrections

Roger E. Walker Jr.
Director

...dia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

July 14, 2006

·man
·01069
·.ctional Center

_·[ ·

·nan:

·nse to your grievance received on April 20, 2006, regarding medical treatment (alleges medication
·sed problems), which was alleged to have occurred at Stateville Correctional Center. This office has
·· issue will be addressed without a formal hearing.

· officer's report, 0288, and subsequent recommendation dated March 24, 2006 and approval by the
·.tive Officer on March 31, 2006 have been reviewed.

·.cted the Health Care Unit and was informed that a follow up on your condition was conducted on
·nd your medication was changed.

·al review of all available information, it is the opinion of this office that the issue was appropriately
·· institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

c/· ·eirdre Battaglia, Stateville Correctional Center
· Coleman, Register No. R01069
·2